UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:17-cr-00018-GFVT-HAI-2 |
| | ) | |
| V. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| MICHELLE SAVAGE, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Michelle Savage's *pro se* Motion for Compassionate Release made pursuant to the First Step Act. [R. 64.] Ms. Savage, an inmate housed at FMC Lexington, seeks relief citing concerns with the COVID-19 pandemic. For the reasons that follow, Ms. Savage's Motion for Compassionate Release is **DENIED**.

**I**

On July 18, 2017, Ms. Savage pled guilty to one count of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. [R. 28; R. 35.] On December 19, 2017, the Court sentenced Ms. Savage to 120 months imprisonment, followed by 5 years of supervised release. [R. 48.] As it stands, Ms. Savage has served less than thirty percent of her 120-month sentence.

On July 27, 2020, Ms. Savage filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), representing that COVID-19 is presently spreading through FMC Lexington, the facility where she is housed, and that she is "high-risk" based on her COPD, emphysema, and hypertension diagnoses. [R. 64 at 3-4.] In the alternative, Ms. Savage seeks relief pursuant to

The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act). *Id.* at 1. The United States opposes the motion, arguing Ms. Savage has failed to exhaust her administrative remedies and that her motion fails on substantive grounds. [*See* R. 66 at 3.]

## II

### A

A compassionate release reduction must be sought first through the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The First Step Act of 2018 altered the compassionate release provision of 18 U.S.C. § 3582, allowing a defendant to move for such a reduction, whereas previously only the Bureau of Prisons could do so. Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194. But a defendant must first demonstrate that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The Court reads the "lapse of 30 days" avenue within the statute as a futility provision. *United States v. Haas*, No. 6:17-CR-00037-GFVT-HAI-1, 2020 WL 4593206, at *4 (E.D. Ky. Aug. 7, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). Under this interpretation, a defendant can demonstrate administrative exhaustion only where the warden fails to respond within 30 days of the initial request. *Id.* If, however, a defendant's initial request is denied within 30 days of the warden's receipt of the request, the defendant must exhaust the administrative appeals process before petitioning the courts for relief. *Haas*, 2020 WL 4593206, at *4.

#### 1

In this case, Ms. Savage has demonstrated that she has exhausted her administrative remedies via the futility provision. The United States confirmed that Ms. Savage filed a request

for compassionate release with the BOP on June 16, 2020. [R. 66 at 1.] She then filed her motion for compassionate release with the Court on July 17—30 days after she filed her initial request with the BOP. [R. 64.] At that point, the Warden had yet to respond to her June 16 request. Consequently, based on the plain language of 18 U.S.C. § 3582(c)(1)(A), she exhausted her administrative remedies via the "lapse of 30 days" avenue and properly petitioned the Court for relief. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020); *Haas*, 2020 WL 4593206, at *4.

Nonetheless, the United States notes that, on August 5, the Warden at FMC Lexington responded and rejected Ms. Savage's initial request for relief—nearly 20 days after Ms. Savage filed her motion in this Court and more than 40 days after she filed her initial request. [R. 66 at 1; R. 66-1.] For purposes of the administrative exhaustion requirement, this untimely denial is immaterial. The BOP failed to act within 30 days and Ms. Savage petitioned the Court for relief after the passage of 30 days. *See Haas*, 2020 WL 4593206, at *4 ("[I]f the BOP fails to act within thirty days after the initial request then a defendant can utilize the futility provision and come into court."). Under the statute, this is all that is required to demonstrate administrative exhaustion.

**B**

Section 3582 allows for modification of a term of imprisonment for "extraordinary or compelling reasons." 18 U.S.C. § 3582(c)(1)(A). The statute also requires a Court to consider any applicable policy statements from the Sentencing Commission. *Id.* On this issue, the Sentencing Commission has issued a policy statement that, in relevant part, allows a court to grant compassionate release or a sentence reduction only where, "(1) extraordinary or compelling reasons warrant a reduction in a defendant's sentence, (2) the defendant is not a

danger to the safety of others or the community, and (3) release from custody complies with § 3553(a) factors." *United States v. Lake*, No. CR 5:16-076-DCR, 2019 WL 4143293, at *2 (E.D. Ky. Aug. 30, 2019) (citing U.S.S.G. § 1B1.13 (2018)).  So, the Court may only reduce Ms. Savage's sentence if "extraordinary or compelling circumstances" warrant the reduction, and the reduction is consistent with the Sentencing Commission's policy statements regarding compassionate release.  U.S.S.G. § 1B1.13.  Here, the United States argues, based on the second and third factors to be considered under U.S.S.G. § 1B1.13, that "even if Savage could show the presence of an extraordinary or compelling reasons, release would still be inappropriate in Savage's case."  [R. 66 at 3.]  The Court agrees.

Ms. Savage has failed to show that she no longer poses a danger to this community if released.  In assessing dangerousness, the Court is to consider a variety of factors, as set forth in 18 U.S.C. § 3142: (1) "the nature and circumstances of the offense . . ., including whether the offense . . . involves . . . a controlled substance; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  *See* U.S.S.G. § 1B1.13(1)(b).  Each of these factors weigh heavily against Ms. Savage's release.

First, the nature of Ms. Savage's offense is particularly concerning.  To start, it involved a conspiracy to distribute methamphetamine and, so, it "involve[d] … a controlled substance."  *See* 18 U.S.C. § 3142(g)(1).  And this was not a small, relatively harmless operation.  In relevant part, Ms. Savage's plea agreement provided as follows: "Defendant and Ricky Bowling had an agreement with multiple, related, out-of-state sources of supply for methamphetamine, which allowed them to regularly receive deliveries of large quantities of methamphetamine from those

4

sources of supply." [R. 31 at 2.] Further, Ms. Savage admitted to possessing multiple firearms which were found at her residence at the time of arrest. [*Id.* at 3; R. 66 at 4.]

Second, the evidence against Ms. Savage was strong. 18 U.S.C. § 3142(g)(1). The United States, citing to Ms. Savage's presentence report, explains as follows: "On October 25, 2016, law enforcement searched the joint residence of Savage and her co-conspirator and found marijuana, multiple firearms (including a loaded pistol), 923.8 grams of methamphetamine, and $16,326 in United States Currency. . . . Savage had sold methamphetamine from this residence to confidential informants in the past." [R. 66 at 4 (citation omitted).] As noted, based on the significant evidence against her, Ms. Savage pled guilty. [R. 31.]

Third, Ms. Savage's history and characteristics also weigh in favor toward a finding of she is a danger to the community. 18 U.S.C. § 3142(g)(3) (relevant history and characteristics include "history relating to drug or alcohol abuse, criminal history" and "whether, at the time of the current offense or arrest, the person was on . . . release pending . . . completion of a sentence"). The United States, again citing to the PSR, notes that Ms. Savage was convicted in state court in February 2015 for trafficking methamphetamine and was arrested in October 2016 while on probation for this offense. [R. 66 at 4–5.] And before this February 2015 conviction, Ms. Savage had been convicted of marijuana trafficking. *Id.* at 5.

Finally, consideration of the first three factors indicates that Ms. Savage poses a concrete and substantial danger to the community if released. Specifically, her extended criminal history indicates she is at significant risk of returning to her past behavior of drug trafficking—illegal conduct that clearly harms the public. *See* 18 U.S.C. § 3142(g)(4).

Ms. Savage acknowledges she has "made some bad choices" but asks for a chance to "live, work, pay taxes, give back to my community," and be a good family member. [R. 67 at 1–

2.] The Court acknowledges the commendable desire by Ms. Savage to contribute to society if released. But Ms. Savage has been given repeated chances to demonstrate she can be a productive member of society and, to this point, has fallen short. While the Court is hopeful Ms. Savage can turn a new leaf, for present purposes, her promise to do so is insufficient. Because Ms. Savage cannot show she is not a danger if released, she is not entitled to compassionate release.

## C

Ms. Savage's alternative request for relief under the CARES Act also must be denied. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was signed into law on March 27, 2020. It contains a provision aimed at helping the BOP mitigate the spread of COVID-19 among federal inmates. Specifically, Section 12003(b)(2) provides:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. 116, 134 Stat. 281, 516, § 12003(b)(2). Attorney General William Barr made the requisite finding in a memorandum for the Director of Bureau of Prisons dated April 3, 2020. Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most affected by COVID-19, https://www.justice.gov/file/1266661/download (last visited May 1, 2020).

The CARES Act makes placement into home confinement a matter of BOP discretion. Nothing in either the CARES Act or 18 U.S.C. § 3642 vests the district courts with the authority to place inmates in home confinement. Such placement decisions rest squarely within the discretion of the BOP. *See United States v. McCann*, No. CR 5:13-52-KKC, 2020 WL 1901089, *3 (E.D. Ky. Apr. 17, 2020) (citing *United States v. Read-Forbes*, 2020 WL 1888856, *5 (D.

Kan. Apr. 16, 2020)). The Court is without the authority to grant Ms. Savage relief under the CARES Act.

### III

Ms. Savage has demonstrated that she exhausted her administrative remedies. However, because she cannot show she is not a danger if released, she fails to demonstrate that she is otherwise entitled to relief. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Michelle Savage's Motion for Compassionate Release **[R. 64]** is **DENIED**.

This the 20th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge